FOR PUBLICATION

UNITED STATES BANKRUPTCY
COURT DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-2(c)**

In re:

BlockFi, Inc.,

          Debtor.

Official Committee of Unsecured Creditors,

          Plaintiff,

      v.

BlockFi, Inc., et al.,

          Defendants.

Case No. 22-19361 (MBK)

Chapter 11

Adv. Pro. No. 23-01144 (MBK)

Hearing Date:  September 21, 2023

**U.S. Department of Justice – Civil Division**
**Commercial Litigation Branch**
Seth B. Shapiro, Esq.
Kirk T. Manhardt, Esq.
Kevin P. VanLandingham, Esq.
Crystal J. Geise, Esq.
Jessica L. Cole, Esq.
P.O. Box 875, Ben Franklin Station
Washington, DC 20044-0875
*Attorneys for the United States of America*

**BROWN RUDNICK LLP**
Robert J. Stark, Esq.
Kenneth J. Aulet, Esq.
Bennett S. Silverberg, Esq.
Seven Times Square
New York, NY 10036
*Counsel for the Official Committee of*
*Unsecured Creditors*

**BROWN RUDNICK LLP**
Tristan Axelrod, Esq.
Sharon I. Dwoskin, Esq.
One Financial Center
Boston, MA 02111
*Counsel for the Official Committee of*
*Unsecured Creditors*

**GENOVA BURNS LLC**
Daniel M. Stolz, Esq.
Donald W. Clarke, Esq.
Gregory S. Kinoian, Esq.
110 Allen Rd., Suite 304
Basking Ridge, NJ 07920
*Local Counsel for the Official Committee of*
*Unsecured Creditors*

<div style="display: flex; justify-content: space-between;">
<div>

**FAEGRE DRINKER BIDDLE & REATH LLP**
Frank F. Velocci, Esq.
600 Campus Drive
Florham Park, New Jersey 07932

Richard J. Bernard, Esq.
Roya Imani, Esq.
1177 6th Avenue, 41st Floor
New York, New York 10036
*Counsel for the Joint and Several Provisional Liquidators of BlockFi International Ltd.*

</div>
<div>

**COLE SCHOTZ PC**
Michael D. Sirota, Esq.
Warren A. Usatine, Esq.
Court Plaza North, 25 Main Street
Hackensack, New Jersey 07601

**HAYNES & BOONE LLP**
Richard S. Kanowitz, Esq.
Richard D. Anigian, Esq.
Charles M. Jones II, Esq.
30 Rockefeller Plaza, 26th Floor
New York, New York 10112
*Attorneys for Defendants and Debtors and Debtors in Possession*

</div>
</div>

## MEMORANDUM DECISION

This matter comes before the Court upon the motion ("Motion", ECF No. 35) filed by Defendant, United States of America ("United States") seeking dismissal of the above-captioned adversary proceeding filed by the Official Committee of Unsecured Creditors (the "Committee"). The Committee opposes the Motion (ECF No. 43). Defendants BlockFi Inc. and its related debtors, debtors-in-possession, and named defendants in the above-referenced chapter 11 cases and adversary proceeding (collectively, "BlockFi" or "Debtors") and the Bermuda Joint and Several Provisional Liquidators of BlockFi International Ltd. both filed a limited response (ECF Nos. 44 & 52, respectively). The Court has fully considered the parties' submissions, including arguments made during the September 21, 2023, hearing. For the reasons expressed below, the Court DENIES the Motion.

## I.      Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court.  As explained in detail below, this matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (G) & (E).  Venue is proper in this Court pursuant to 28 U.S.C. § 1408 and § 1409.

## II.     Background and Procedural History

The factual and procedural history of this case is well known to the parties and will not be repeated in detail here.  In relevant part, in October 2022, a federal grand jury in Washington state returned a criminal indictment for wire fraud and money laundering against two BlockFi account holders: Sergei Potapenko & Ivan Turogin (collectively, the "Criminal Defendants").[1]  "On November 10, 2022, the Honorable Michelle L. Peterson, Magistrate Judge in the Western District of Washington, issued four Seizure Warrants [the 'Warrants'] directing law enforcement to seize 'all funds—including virtual currencies—from' the named BlockFi accounts [the 'Subject Accounts']." *Motion* 13, ECF No. 35.   "That same day, BlockFi paused all activity on its platform due to the FTX collapse and resulting market conditions.  Six days later, the United States served the Warrants on BlockFi, twelve days before BlockFi filed chapter 11 petitions [on November 28, 2022]." *BlockFi's Limited Response* ¶ 1, ECF No. 44.

Debtors explain that "[t]he Subject Accounts comprised three account types: (i) BlockFi Wallet ('Wallet'), (ii) BlockFi Interest Accounts ('BIAs'), and (iii) certain loan collateral accounts

---

[1] *Indictment* [ECF 1, filed Oct. 27, 2022], *United States v. Sergei Potapenko & Ivan Turogin*, Case No. 2:22-CR-00185-RSL (W.D. Wash.).

(the 'Collateral Accounts'). The total value of digital assets attributable to the Subject Accounts was, as of the service date of the Warrants, approximately $57 million." *Id.* at ¶ 2.  The United States reports that BlockFi partially complied with the Warrants by surrendering roughly $719,665 of digital assets that were attributable to Wallet Accounts.  Indeed, this Court previously has ruled that digital assets held in Wallet Accounts by customers were *not* property of the bankruptcy estate and should be distributed to the appropriate account-holder. *Order Authorizing the Debtors to Honor Withdrawals from Wallet Accounts*, ECF No. 923.  BlockFi retained the remainder of the assets allegedly subject to the Warrants, which were held in both the BIAs and Collateral Accounts. Ultimately, BlockFi agreed to transfer the remaining cryptocurrency in the Subject Accounts— with a stipulated value of over $35 million—to the United States.  Before the transfer could occur, the Committee commenced the instant adversary proceeding and obtained an order from this Court temporarily enjoining the transfer. *Amended Order to Show Cause and for Temporary and Preliminary Injunctive Relief*, ECF No. 10.   The parties then entered into a series of Stipulations and Consent Orders (ECF Nos. 20, 21, & 28) wherein they agreed to a briefing schedule and certain filing deadlines.  On August 10, 2023, the United States filed the instant Motion seeking dismissal of the adversary proceeding.

### III.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012, a motion to dismiss may be granted if the complaint fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual allegations, taken as true, to 'state a claim to relief that

is plausible on its face.' " *Fleisher v. Standard Ins.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)).  When reviewing a motion under 12(b)(6), a court must "view the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff, and judgment should not [be] granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002) (citation omitted); *see also Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 14 U.S. 662, 678 , 129 S. Ct. 1937, 1949 (2009) (citing *Twombly* at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929).  In this matter, the Committee has satisfied its burden to state a plausible claim for relief.

## IV.    Discussion

The Motion seeks dismissal of the Committee's Complaint[2] on two bases: lack of subject matter jurisdiction and failure to state a claim.  Prior to filing its Motion, however, the United States moved the district court to withdraw the reference. *Motion to Withdraw the Reference,* ECF No. 1 in Case No. 3:23-cv-03015.  Just before oral argument on the instant Motion, the district court issued its Opinion and Order denying the United States' Motion to Withdraw the Reference—finding that mandatory withdraw was not warranted, and that permissive withdraw

---

[2] The "Complaint" refers to the Amended Complaint (ECF No. 24) filed on June 30, 2023, which is the operative document.

was premature because the bankruptcy court had not yet made the threshold determination of whether the issues presented in the adversary proceeding were core or non-core. *Opinion Denying Motion to Withdraw the Reference*, ECF No. 14 in Case No. 23-cv-03015. This Court now takes the opportunity to weigh in on the core v. non-core issue.

### A.  The matter is a core issue

Pursuant to 28 U.S.C. § 1334 bankruptcy jurisdiction extends to four types matters: (1) cases 'under' title 11; (2) proceedings "arising under" title 11; (3) proceedings "arising in" title 11; and (4) proceedings "related to" a case under Title 11. 28 U.S.C. §§ 1334(b), 157(a); *Celotex Corp. v. Edwards,* 514 U.S. 300, 307, 115 S. Ct. 1493, 131 L.Ed.2d 403 (1995); *In re G-I Holdings, Inc.*, 580 B.R. 388, 423 (Bankr. D.N.J. 2018).  "Matters 'under' title 11 simply refers to the bankruptcy petition itself." *In re Rusciano*, No. 15-32888, 2020 WL 111470, at *4 (Bankr. D.N.J. Jan. 8, 2020) (citing *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006)).

> [A] case "arises under" title 11 if it invokes a substantive right provided by title 11. Proceedings "arise in" a bankruptcy case, if they have no existence outside of the bankruptcy. Finally, a proceeding is "related to" a bankruptcy case if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.
>
> *In re G-I Holdings, Inc.,* 580 B.R. at 423 (citing case *Stoe v. Flaherty*, 436 F.3d 209, 216

(3d Cir. 2006), *as amended* (Mar. 17, 2006).

The crux of the Committee's argument in its Complaint is that the funds sought by the United States are property of the bankruptcy estate and, thus, subject to the automatic stay.  Indeed, an action to determine the scope of the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G).  The United States maintains that this dispute is—at its heart—a criminal action that

the Committee is trying morph into a core proceeding by framing it as a violation of the automatic stay. This Court does not agree. As noted by the district court, the adversary proceeding tasks this Court with determining whether the funds at issue are included in the bankruptcy estate. *See Opinion Denying Motion to Withdraw the Reference* 13, ECF No. 14 in Case No. 23-cv-03015 ("Here, the Adversary Proceeding requires the Bankruptcy Court to interpret the Seizure Warrants and to determine whether the funds at issue in the accounts are included in the Bankruptcy estate."). This task fits squarely within the role of the bankruptcy court and is a fundamentally core issue.

The Court does not share the United States' view that the adversary proceeding is an attempt to prevent BlockFi from complying with the Warrants or an effort to prevent the United States from prosecuting the motion to compel compliance with the Warrants. The Committee has clarified in submissions and on the record that it is not "seeking to interfere with or alter the legitimate rights that the United States has by virtue of the Seizure Warrants." *Committee's Opp'n to Motion* 4, ECF No. 43. Rather, the Committee seeks to prevent the United States from seizing estate assets that are neither named in the Warrants, nor subject to forfeiture under applicable criminal statutes. Again, the question of what constitutes estate property is undeniably a core issue. In this instance, however, that inquiry also requires interpretation of the Warrants and a determination as to whether Debtors are in possession of the specific property covered in those Warrants. That analysis implicates other jurisdictional concerns—raised by the United States in its Motion—which the Court now addresses.

### B.  Subject Matter Jurisdiction

The United States first relies on 21 U.S.C. § 853, which provides—in relevant part—that

> no party claiming an interest in property subject to forfeiture under this section may--
> . . .
>> (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

21 U.S.C. § 853(k).

The United States asserts that the Committee initiated this adversary proceeding after the filing of the indictment against the Criminal Defendants (the "Indictment") with the purpose of alleging an interest in the property subject to forfeiture.  "Because the Complaint seeks to adjudicate the estates' right to property described in the Indictment, the lawsuit is barred by the plain language of Section 853(k)(2) and must be dismissed for lack of subject matter jurisdiction." *Motion* 15, ECF No. 35 (citing *Brown v. United States*, 692 F.3d 550, 552 (6th Cir. 2012)).

The Committee clarifies that it "does not assert an interest in the assets subject to the Seizure Warrants." *Committee's Opp'n* ¶ 19, ECF No. 43.  It is the Committee's position that the funds it seeks to protect do not—**and never did**—belong to the Criminal Defendants.  Thus, the Committee asserts that 21 U.S.C. § 853(k)—which applies only to "property subject to forfeiture"—is inapplicable.  This Court agrees.  The purpose of the adversary proceeding is not to interfere with the criminal forfeiture, but to determine what assets are subject to the criminal forfeiture.  The United States maintains that the bankruptcy court is without jurisdiction to make this determination.

Although the United States acknowledges that § 1334(b) of Title 28 permits district courts to refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . .to the bankruptcy judges for the district," the United States asserts that "[n]o federal statute or rule . . . authorizes the delegation of criminal actions or forfeiture proceedings brought by the United States to the bankruptcy court. The district courts instead have exclusive jurisdiction over matters related to federal criminal statutes."  In support of this contention, the United States cites to 18 U.S.C. § 3231, which provides that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States," and to 28 U.S.C. § 1355, which states that "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture."

The United States asserts that "[h]ere, the claims seek to interfere with the criminal proceedings and to declare the parties' interests in the property subject to forfeiture—matters governed by criminal statutes. An indictment alleging a violation of the federal criminal code and seeking forfeiture of assets based upon conviction of such violation necessarily falls under district court's jurisdiction." *Motion* 18, ECF No. 35.  And because the district court has no authority to delegate that jurisdiction, the United States concludes that this Court lacks jurisdiction over the issues raised in the adversary proceeding.  Again, this Court does not share the United States' view of these proceedings.

The question presented in this case can be framed two different ways.  The first question asks whether the funds remaining in Debtors' possession at the time of the bankruptcy filing are

9

property of the bankruptcy estate.[3]  The second asks whether the funds held by Debtors are subject

to forfeiture under the Warrants.  When looked at under the lens of the first question, there is no

question as to this Court's jurisdiction—as discussed, it clearly invokes a core bankruptcy matter.

When looked at through the lens of the second question, the jurisdictional issue undeniably

becomes murky.  Nevertheless, this Court rules that—even when viewed from the perspective of

the United States—this Court still maintains original and exclusive jurisdiction over all estate

assets as described broadly in 11 U.S.C. § 541(a).

     As an initial matter, it is not unheard of for bankruptcy courts to determine whether

property is properly subject to seizure under criminal statutes.  For example, in *In re Reid*, 60 B.R.

301, 306 (Bankr. D. Md. 1986), a bankruptcy court conducted a forfeiture hearing in response to

a trustee's motion for turnover to determine whether $35,595 in currency that had been seized was

subject to forfeiture under Maryland criminal statute, *see* MD CODE ANN. art. 27, § 297(a)(6)

(repealed).  After conducting an analysis of state forfeiture law and applicable state case law, the

bankruptcy court concluded that "$3,000 of the seized currency is not attributable to proscribed

activity and is therefore not forfeitable," and directed turnover of that amount to the trustee for the

bankruptcy estate. *In re Reid*, 60 B.R. at 308.  This Court's research revealed several other

instances in which bankruptcy courts interpreted criminal statutes for the purposes of determining

---

[3] As discussed herein, the funds held by the Debtors on the date of filing were accumulated through the liquidation of all digital assets pledged to or deposited with the Debtors by its customers through their individual BIAs or Collateral Accounts.  Accounts belonging to the Criminal Defendants—like all other customers—held no digital assets or proceeds thereof on the date of the bankruptcy filing.  Rather, account holders merely held claims against the Debtors for such amounts owing. Even prior to the filing and subsequent liquidation, the digital assets were never sitting in an account; rather, they were rehypothecated, repledged, or otherwise transferred as part of transactions with other entities, such as Alameda, FTX, or 3AC.

whether seized property constituted property of the bankruptcy estate. *See, e.g.*, *In re Vitta*, 409 B.R. 6 (Bankr. E.D.N.Y. 2009) (interpreting state forfeiture law to determine whether the property seized by police prepetition, and against which the DA had obtained an order of attachment prepetition, was property of the estate as of the date the petition was filed); *In re WinPar Hosp. Chattanooga, LLC*, 401 B.R. 289, 294 (Bankr. E.D. Tenn. 2009) (citing *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 383 (6th Cir. 2001) and acknowledging concurrent jurisdiction with the district court to determine whether the automatic stay precluded a forfeiture proceeding); *In re Thomas*, 179 B.R. 523, 527 (Bankr. E.D. Tenn. 1995) (finding the issue to be a core proceeding and holding that the bankruptcy court "clearly" had jurisdiction to determine whether police department's post-petition seizure and collection of property of the estate constituted a violation of the automatic stay); *In re Kurth Ranch*, 122 B.R. 759, 763 (Bankr. D. Mont. 1991) (interpreting the Uniform Controlled Substances Act to determine whether the trustee had any "legal or equitable right to the property held by the Defendant County pursuant to the forfeiture"); *In re Ryan*, 32 B.R. 794, 796 (Bankr. D. Md. 1983) (interpreting state seizure law and deciding the ultimate question of whether funds seized on the eve of bankruptcy were property of the estate).

Admittedly, limited case law exists supporting the United States' contention that district courts have exclusive jurisdiction over matters related to federal criminal statutes. The United States relies heavily on *In re GuildMaster, Inc.*, No. 12-62234, 2013 WL 1331392 (Bankr. W.D. Mo. Mar. 29, 2013). In *GuildMaster*, the bankruptcy court dismissed an adversary proceeding brought by a debtor against the United States seeking turnover of seized property. The *GuildMaster* court explained that it lacked jurisdiction to decide the relative priorities of the

11

parties' interests in the seized property because that inquiry "necessarily involves the interpretation and application of criminal statutes which are directly at issue in a pending criminal matter." *Id.* at *1. This Court's research returned several other cases—some of which are also cited by the United States—suggesting that bankruptcy courts are without jurisdiction to evaluate parties' respective interests in property subject to seizure. *See, e.g.*, *In re VPH Pharmacy, Inc*., No. 18-11280, 2018 WL 3574721, at *3 (E.D. Mich. July 25, 2018) (ruling that district courts, not bankruptcy courts, have original and exclusive jurisdiction to determine the correctness of a forfeiture action and explaining that once a judgment of forfeiture is entered, the property belongs to the Government and ownership dates back to the filing of the case); *United States v. DeMiro*, 446 B.R. 804, 807–08 (E.D. Mich. 2011) (holding that because the Government sought forfeiture prior to entry of the orders of relief, the debtors' legal interest in the assets subject to forfeiture was limited to the right to petition for a hearing in the district court under 21 U.S.C. § 853(n)(2)); *In re Thena, Inc.,* 190 B.R. 407, 410, 413 (D. Or. 1995).

In resolving this jurisdictional quagmire, this Court first notes that none of the seemingly contradictory case law is binding on this Court. More significantly, the cases cited are factually distinguishable in that they all involve a debtor who is the criminal defendant whose property is subject to forfeiture. In contrast, the Debtors here are creditors of the Criminal Defendants, who stand in the same shoes—holding unsecured claims against the Debtors—as the over 600,000 other customers. Ultimately, this Court is persuaded by the Committee, who argues that such line of cases holding that issues regarding seized property implicated in a criminal proceeding are not within the purview of the bankruptcy court are "irrelevant in the context of this case." *Committee's*

*Opp'n* 10, ECF No. 43.  In resolving this adversary proceedings, the Court will not adjudicate the merits or enforceability of the Warrants; nor will this Court need to interpret or apply any provisions of Title 18 in determining whether any of the funds in the Debtors' possession are, in fact, traceable to the assets deposited by the Criminal Defendants.  Instead, the scope of this Court's ruling is limited to deciding whether property in Debtors' possession is estate property or, alternatively, whether it is property subject to forfeiture pursuant to the Warrants.  To be clear, this is not a determination regarding the priority of interests in the property subject to seizure.  Due to the relation-back provision in 21 U.S.C. § 853(c), title to the property identified in the Warrants vested with the United States upon the commission of the crime and, thus, never entered the bankruptcy estate.  To the extent property held by the Debtors is *not* subject to the Warrants; however, such property falls within the scope of 11 U.S.C. § 541(a) as is property of the bankruptcy estate.  This Court is equipped and authorized to make a determination as to what constitutes property of the estate—and, indeed, is the court in the best position to make such a ruling.  Nothing in the criminal statutes or case law cited by the United States deprives this Court of such authority.  Therefore, the United States' Motion to dismiss for lack of subject matter jurisdiction is denied.

### C.  Sovereign Immunity

The United States' argument with respect to sovereign immunity is inextricably tied to its jurisdictional argument.  In sum, the government relies on the proposition that a party may not bring suit against the federal government or its agencies unless the United States has expressly consented to be sued. *See Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260, 119 S. Ct. 687, 690, 142 L. Ed. 2d 718 (1999) (citing *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S. Ct. 996, 127 L.Ed.2d

308 (1994)).  A plaintiff's "inability to identify an unequivocal waiver of sovereign immunity by Congress" will result in dismissal of the claim against the government. *Spangler v. Centers for Medicare & Medicaid Servs.*, No. 1:18-CV-01297, 2019 WL 4194276, at *4 (M.D. Pa. Sept. 4, 2019) (citing *Glob. Fin. Corp. v. United States*, 67 F. App'x 740, 742 (3d Cir. 2003)).  Because sovereign immunity is jurisdictional in nature, *see FDIC v. Meyer*, 510 U.S. at 475, if unequivocal waiver is not established, the court lacks subject matter jurisdiction over the issues raised. *See Spangler*, 2019 WL 4194276, at *4.

Here, the United States asserts that the Committee relies on 28 U.S.C. § 1334(e) in support of its jurisdictional argument and—because the statute does not abrogate sovereign immunity—this Court is without jurisdiction to hear the adversary proceeding.  The Committee counters by pointing out that "Bankruptcy Code Section 106 expressly abrogates and waives sovereign immunity with respect to, among other sections, Sections 105 and 362, and provides that the bankruptcy court may hear and determine any issue arising with respect to the application of such sections." *Committee's Opp'n* ¶27, ECF No. 43 (citing 11 U.S.C. § 106(a); *Lac de Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 143 S. Ct. 1689, 1691 (2023)).  As discussed, this Court agrees with the Committee that the nature of this dispute is more accurately characterized as a disagreement regarding what constitutes property of the estate and, as a corollary, what property is subject to the automatic stay.  As discussed, contrary to the United States' assertions, 21 U.S.C. § 853(k) does not bar the adversary proceeding.  Therefore, the United States' sovereign immunity argument fails for the same reasons as its subject matter jurisdiction argument.

The United States additionally contends that 11 U.S.C. § 362(b)(4) "exempts the criminal forfeiture proceedings from the scope of the automatic stay" and, "[b]ecause the automatic stay in Section 362(a) does not apply, the waiver of sovereign immunity in Section 106(a) for lawsuits to enforce the automatic stay also does not apply." *Motion* 21, ECF No. 35.  For reasons discussed *infra*, this Court rejects this argument.

### D.  Whether the Committee's Claims are plausible

The United States presents a two-fold argument seeking dismissal of the adversary proceeding based on the Committee's failure to state a claim upon which relief can be granted. First, the United States contends that the criminal proceedings are exempt from the automatic stay; therefore, the Committee's assertion that relief from the stay is required to enforce the automatic stay is erroneous.  Second, the United States argues that—due to the criminal law relation-back doctrine—the assets subject to the Warrants never became part of the bankruptcy estate such that the estate can now control their distribution.

### 1.  The Automatic Stay

When a debtor files for bankruptcy, the Bankruptcy Code imposes a broad automatic stay that precludes actions to recover against the debtor or property of the estate. 11 U.S.C. § 362(a). There exist certain statutory exceptions to the operation of the automatic stay.  In its Motion, the United States contends that the exception permitting "commencement or continuation of a criminal action or proceeding against the debtor" is applicable in this case. *Motion* 22, ECF No. 35 (quoting

11 U.S.C. § 362(b)(1)).[4]  However, the criminal action or proceeding at issue here is not against the debtor.  Therefore, subsection (b)(1) does not apply.

In an effort to seize the funds in the Debtors' possession, the United States cites to § 362(b)(4), which provides that

> The filing of a petition ... does not operate as a stay—
>
> (4) . . . of the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power[.]

11 U.S.C. § 362(b)(4).

The Committee argues that this section "does not permit the Government to assert its pecuniary right to repayment and thus take priority over the Debtors' other creditors." *Committee's Opp'n* ¶32, ECF No. 43.  Indeed, the advisory committee notes to the statute instruct that this statutory exception "is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." 11 U.S.C. § 362(b)(4) advisory committee's note.  Accordingly, the Third Circuit employs two tests—the pecuniary purpose and public policy tests—to determine whether proceedings fall within the police power exception to the automatic stay:

> The pecuniary purpose test asks whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health. The public policy test asks whether the government is effectuating public policy rather than adjudicating private rights. If the purpose of

---

[4] The United States' Motion mistakenly cites this as language from § 362(b)(4).  It is actually the language of § 362(b)(1).

the law is to promote public safety and welfare or to effectuate public policy, then the exception to the automatic stay applies. If, on the other hand, the purpose of the law is to protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable.

*In re Nortel Networks, Inc*., 669 F.3d 128, 139–40 (3d Cir. 2011); *see also In re LTL Mgmt., LLC*, 645 B.R. 59, 79-80 (Bankr. D.N.J. 2022) (collecting cases).

As to the pecuniary purpose test, the Court determines that the United States' actions in this case do not protect public safety and health.  Indeed, the public will not be exposed to any danger if the funds are not recovered.  With respect to the public policy test, the United States refers to the "paramount interest in protecting its citizens through its police power," and the "well-recognized public benefits of [a forfeiture proceeding], namely the punishment of criminals and the deterrence of others who might be like-minded." *Motion* 24, ECF No. 35 (quoting *Matter of Davis*, 691 F.2d 176, 179 (3d Cir. 1982)); *Tr. of Sept. 21, 2023 Hrg.* 15:8-10, ECF No. 54. According to the United States, the forfeiture proceedings against the Criminal Defendants effectuate these important public policies and, thus, are exempt from the automatic stay.

It is undisputed that BlockFi customers with BIA or Collateral Accounts will be receiving distributions under the Debtors' confirmed plan representing only a fraction of the amounts actually due and owing.  Were the United States to be successful in obtaining the full amount sought under the Warrants, the return to other customers and creditors would be significantly reduced further. When questioned about the negative impact that the government's actions would have on the Debtors' creditors—namely, requiring innocent creditors to chip in and pay an obligation owed by the Criminal Defendants—the United States conceded that "allowing the

17

forfeiture proceeding to go forward might ultimately benefit the defrauded victims at the expense

of creditors." *Motion* 23, ECF No. 35; *see also Tr. of Sept. 21, 2023 Hrg.* 21:15, ECF No. 54

(acknowledging "some prejudice to be suffered by those unsecured creditors").  Nevertheless, the

United States maintains that this is the scheme created and intended by Congress. *See Tr. of Sept.

21, 2023 Hrg.* 24:2-8, ECF No. 54.    *Tr. of Sept. 21, 2023 Hrg.* 25:16-18, ECF No. 54 ("[I]t's the

Government's view that while we sympathize with those creditors, we think the crime victims are

the larger victims in the general sense of the word here."); *id.* at 14:22-24 ("[BlockFi creditors]

should blame Congress, Your Honor. They should not blame the United States Justice

Department.").[5]

In both its pleadings and its argument on the record, the United States relies on *In re

WinPar Hosp. Chattanooga, LLC*, 401 B.R. 289, 291 (Bankr. E.D. Tenn. 2009) in support of its

position.  However, the Court finds this case distinguishable.  In *In re WinPar*, a debtor's principal

purchased a property with proceeds from illegal activity.  The debtor then filed for bankruptcy and

the chapter 7 trustee sold the property in question, which was the debtor's only asset.   The

government commenced a civil forfeiture action against the property in question and the proceeds

of sale.  When the chapter 7 trustee attempted to invoke the automatic stay to protect the funds,

the bankruptcy court ruled that "forfeiture actions involving alleged proceeds of criminal activity

come within the police power exception to the automatic stay." *In re WinPar Hosp. Chattanooga,

LLC*, 401 B.R. at 293 (citing *In re James,* 940 F.2d 46, 50–51 (3d Cir. 1991).  In so ruling, the

---

[5] As the Court noted on more than one occasion during oral arguments, it seems inexplicable that Congressional intent or public policy somehow is furthered by having innocent BlockFi creditors satisfy the forfeiture obligations of the Criminal Defendants.  Quite simply, such a result would be a windfall for the Criminal Defendants at the expense of uninvolved innocent third parties.

bankruptcy court engaged in a thorough discussion and emphasized that civil forfeiture serves as

a means to punish and deter offenders. *See id.* at 292-93. However, there is a critical difference

between the circumstances in *In re WinPar* and the instant case.  In *In re WinPar*, the property

subject to seizure was *directly traceable* to the criminal activity.  In contrast, the weight of the

evidence in this case at this juncture suggests that the funds the United States seeks to recover are

*not* directly traceable to the Criminal Defendants and their criminal activity.  Indeed, the digital

assets that were in the Criminal Defendants' accounts at the time they committed the crime are no

longer in Debtors' possession.  As acknowledged by Debtors and the Committee throughout these

proceedings, the digital assets loaned to or deposited with BlockFi were subsequently

rehypothecated, repledged, or otherwise transferred as part of transactions with other entities, such

as Alameda, FTX, or 3AC.  Thus, the Complaint adequately alleges that the United States seeks

to satisfy its Warrants, not by collecting the Criminal Defendants' digital assets or funds directly

traceable to those individuals, but by collecting *other, substituted* funds—funds comprised of

contributions made by Debtors' other innocent customers and creditors.  This action—which the

Court accepts as true for purposes of the motion to dismiss, as it must (*see Leamer v. Fauver*, 288

F.3d at 535)—does not effectuate the public policies of punishment and deterrence identified by

the United States, and potentially serves an inverse purpose by relieving the Criminal Defendants

of their obligation.  This is significant given the Third Circuit's instruction to look "to the purpose

of the proceeding at issue" when interpreting the police power exception. *In re Nortel Networks,*

*Inc.*, 669 F.3d ta 140.

Moreover, the Court notes that Congress contemplated a substitution procedure to be used in circumstances where property subject to forfeiture could not be found or otherwise executed upon.  Pursuant to 21 U.S.C. § 853(p)(2), a court "shall order the forfeiture of any other property **of the defendant**, up to the value of any property described" in the forfeiture warrant if

> as a result of any act or omission of the defendant--
> (A) cannot be located upon the exercise of due diligence;
> (B) has been transferred or sold to, or deposited with, a third party;
> (C) has been placed beyond the jurisdiction of the court;
> (D) has been substantially diminished in value; or
> (E) has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1) (emphasis added).

Thus, even if this Court were to accept that Congress intended to give priority to victims of crime over "victims" in an unrelated bankruptcy proceeding (a determination that this Court does not make at this juncture), this Court cannot accept that Congress intended to burden an uninvolved debtor's creditors by requiring them to compensate victims of a defendant's crime—especially when the statute provides a means to compel forfeiture of a defendant's other property to compensate his/her own victims.  Satisfying the Criminal Defendants' seizure warrant through funds not traceable to those Criminal Defendants does not punish or deter offenders and does not effectuate the remedial purpose of the forfeiture statute. *See* 21 U.S.C. § 853(o) ("The provisions of this section shall be liberally construed to effectuate its remedial purposes.").  Accordingly, the Court is not persuaded by the rationale in *In re WinPar* and holds that—under the circumstances of this case—the police power exception to the automatic stay under § 362(b)(4) is inapplicable. Therefore, the Court declines to dismiss the case on such basis at this juncture.

### 2.  The Relation-Back Doctrine

Finally, the United States contends that the adversary complaint must be dismissed because "[t]he Complaint erroneously presumes that cryptocurrency assets subject to the Seizure Warrants became part of the bankruptcy estate upon deposit, and that the estate may now control their distribution, assigning the United States a 'pro rata share.' " *Motion 25*, ECF No. 35.  "Under the relation-back doctrine, the government acquires its interest in the defendant's forfeited property at the time of the commission of the criminal acts giving rise to the forfeiture." *United States v. Lavin*, 942 F.2d 177, 185 (3d Cir. 1991) (citing 21 U.S.C. § 853(c)).  The United States explains that in this case, the Criminal Defendants committed their crimes between December 2013 and August 2022—well before they deposited their assets in the BlockFi accounts and long-before the bankruptcy filing.  Thus, the United States contends it acquired an ownership interest in the assets subject to seizure well before the bankruptcy, and such assets never became part of the bankruptcy estate.  This Court agrees.

As discussed, this Court will not reexamine the merits of the Warrant or make determinations as to any third party's interest in the assets subject to forfeiture.  The relation-back doctrine applies to the property identified in the Warrants.  That property never entered the bankruptcy estate and is not subject to the automatic stay.  Thus, the United States properly and timely received the traceable funds deposited in the Criminal Defendants' Wallet Accounts.  In the Court's view, the instant adversary proceeding does not seek to interfere with the seizure of the property identified in the Warrants.  Rather, this adversary proceeding seeks to protect property of

the estate that is *not* identified in the Warrants or subject to seizure. *See Tr. of Sept. 21, 2023 Hrg.* 33:2-7 ("We're trying to prevent the Government from seizing the assets that are not proceeds of the crime or derived from proceeds of the crime, and those are the assets that are beyond either what was actually deposited by the criminal defendants or what the criminal defendants would receive on account of their claim.").

The United States contends that it owned the accounts themselves, and not just the funds inside the accounts—funds which in the course of the Debtors' operations were transferred, pledged, traded, or rehypothecated pursuant to Debtors' contractual rights—and not just the Criminal Defendants' right to payment. *See e.g.*, *Tr. of Sept. 21, 2023 Hrg.* 11:15-25; *id.* at 12:17-21 ("[W]e believe we are seizing the account itself and the contents of that account, and that's why the Government takes the view that we are not a creditor of the estate, and we are not a -- we are not seizing some kind of debt obligation or right to payment.").[6] As an initial matter, this position is contradicted by the language of the Warrants themselves, which describes the property subject to forfeiture as "[a]ll funds—including virtual currencies—from BlockFi account." *See Warrant - Exhibit 2 to Motion to Withdraw the Reference*, ECF No. 13-3.  Regardless, the United States maintains that it was told at the time the warrants were served that the subject funds were in the

---

[6] As a result of the criminal forfeiture proceeding, the United States stands only in the shoes of the Criminal Defendants with respect to their interests in all assets arising from or traceable to the alleged criminal activity. *See United States v. Peña-Fernández*, 378 F.Supp.3d 130, 132-33 (D. P.R. 2019), quoting *United States v. Huntington Nat'l Bank*, 682 F.3d 429, 433 (6th Cir. 2012) ("Section 853 permits the United States to step into [a criminal defendant's] shoes, 'acquiring only the rights [he possessed] at the time of the criminal acts, and nothing more.' "). The Committee does not contest this proposition.  However, as a result of the bankruptcy filing, the Criminal Defendants held only the same rights as all other BIA and Collateral Account holders—to wit, a return of their funds or a pro-rata share if BlockFi was insolvent—nothing more.  An account-holder simply holds a claim and nothing in Title 18 provides that the United States can be entitled to a recovery that is greater than what the Criminal Defendants could obtain.

accounts. During oral argument there was some disagreement and confusion on the record as to whether that information was accurate. *See Tr. of Sept. 21, 2023 Hrg.* 39:5-9 ("So, I just want to make sure the record is clear that there is some dispute about, you know, factually about what happened here, what money was there when the accounts were seized on the day the warrants were served, what was there at the time the crimes were committed."). Nevertheless, all parties seem to agree that—as of the date of the hearing—those same funds are no longer in the Criminal Defendants' BlockFi accounts. Because the Committee plausibly alleges that the United States attempted to seize property of the estate that was not subject to the Warrants, the Complaint will not be dismissed at this early stage in the litigation.

Moreover, the United States indicates that it has the ability to trace the funds and demonstrate what precisely was in the Criminal Defendants' accounts and, thus, what is properly subject to seizure. *See Tr. of Sept. 21, 2023 Hrg.* 22:24 – 23:4, ECF No. 54 ("Once that forfeiture judgment is entered, if we can show -- and we do have the ability to trace, and we have traced up until the time when the seizure warrants were issued, and this would come out if we have a trial, Your Honor, we will be able to show that what the criminal defendants had at that time, and we should be allowed to seize that."). Admittedly, the United States contends that the District Court in the Western District of Washington should be the court to decide any tracing issues, to the extent tracing is relevant, due to the "jurisdictional framework." *Id.* at 39:9-19. For reasons previously discussed, this Court resolves at this time that it maintains proper jurisdiction to make determinations as to what constitutes property of the estate. Accordingly, the United States' argument is rejected.

### V.      Conclusion

In sum, this Court does not conclude that it is without jurisdiction to make determinations as to what constitutes property of the estate, whether such property is protected by the automatic stay, or whether it may issue an injunction under § 105(a) to protect estate property if the circumstances so warrant. *In re LTL Mgmt., LLC*, 645 B.R. at 81 (recognizing a bankruptcy court's ability to issue injunctive relief under § 105(a) or impose or extend the automatic stay under § 362(a) where the exercise of police power seriously conflicts with the policies underlying the Bankruptcy Code).   Therefore, the United States' Motion to Dismiss is DENIED and the United States is directed to file an answer or otherwise move as appropriate within 30 days of the entry of this Court.   Counsel for the Committee is directed to submit a proposed form of order consistent with this Court's ruling.

Michael B. Kaplan, Chief Judge
U.S. Bankruptcy Court
District of New Jersey

Dated: October 10, 2023