IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>**BLOCKFI, INC.,** *et al.*<br><br>Debtors. | Chapter 11<br><br>Bankr. Case No. 22-19361 (MBK) |
| **MOHSIN MEGHJI,** *solely is his capacity as* **PLAN ADMINISTRATOR,** *for the Jointly Administered Estates of the* **WIND DOWN DEBTORS, BLOCKFI, INC. ET AL.**<br><br>Plan Administrator,<br><br>v.<br><br>**UNITED STATES OF AMERICA**,<br><br>Defendant. | Adv. Pro. No. 23-01144 (ABA) |

**MEMORANDUM DECISION**

The matter before the court is the Motion to Stay Pending Appeal filed by the defendant, the United States of America (the "United States"), (Doc. No. 77) (the "Motion"), which requests a stay of this adversary proceeding pending the District Court's consideration of the United States Motion for Leave to File an Interlocutory Appeal and if such motion is granted, pending appeal. The appeal arises from the court's Order Denying Motion to Dismiss by Defendant United States of America (Doc. No. 57), and the Opinion Denying Motion to Dismiss (Doc. No. 55, together with Doc. No. 57, the "MTD Op."). Mohsin Meghji, solely is his capacity as Plan Administrator, for the Jointly Administered Estates of the Wind Down Debtors, BlockFi, Inc. et al. ("Plan Administrator")[1] opposes the Motion. For the reasons set forth below, the Motion is denied in its entirety.

---

[1] This adversary proceeding was originally instituted by the Official Committee of Unsecured Creditors against the United States and the Debtors, BlockFi, Inc., et al. Thereafter, Mohsin Meghji of M3 Partners, was appointed as Plan Administrator of the Debtors' plan as of the effective date, October 24, 2023. By stipulation and consent of the parties, Mr. Meghji was substituted in the place of the Official Committee of Unsecured Creditors as the real party in interest in this adversary proceeding. (Doc. No. 76).

1

## JURISDICTION AND VENUE

The court has jurisdiction pursuant to 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984, as amended on September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter before the court is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (G), (E), and (O). Venue is proper in this court pursuant to 28 U.S.C. §§ 1408 and 1409. The following constitutes this court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## PROCEDURAL HISTORY

This adversary proceeding was initiated by the filing of a Complaint (Doc. No. 1) on May 22, 2023 and thereafter, an Amended Complaint (Doc. No. 24) was filed on June 30, 2023. The Amended Complaint sought to enforce the automatic stay and prevent the United States from entering into a stipulation with the Debtors, BlockFi, Inc. et al., whereby BlockFi would agree to pay the United States, in full in kind, the net account balance of each of certain accounts opened by two criminal defendants that the United States assert are subject to a criminal forfeiture order pursuant to 21 U.S.C. § 853. On May 31, 2023, the United States filed a motion to withdraw the reference over the adversary proceeding to the United States District Court for the District of New Jersey (the "District Court") (Doc. No. 13). On August 8, 2023, the United States moved to stay the adversary proceeding pending the resolution of its motion to withdraw the reference, which the Official Committee of Unsecured Creditors opposed. On September 20, 2023, the District Court entered an opinion and an order denying the motion to withdraw the reference (the "Withdrawal Op.").

Then, the United States filed a Motion to Dismiss Adversary Proceeding (Doc. No. 35) asserting the bankruptcy court lacked subject matter jurisdiction and the failure to state a claim. Chief Judge Kaplan issued the MTD Op. denying the Motion to Dismiss the Adversary Proceeding on October 10, 2023. Chief Judge Kaplan concluded that the adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(G) because it involves an action to determine the scope of the automatic stay. Chief Judge Kaplan also concluded the court had subject matter jurisdiction to determine whether property in the Debtors' possession is estate property or, alternatively, whether it is property subject to forfeiture pursuant to the forfeiture warrants. (MTD Op. at 8-13). Chief Judge Kaplan rejected arguments that this proceeding is barred by sovereign immunity or that a police and regulatory exception to the automatic stay, 11 U.S.C. § 362(b)(4), is applicable.

On October 30, 2023, this adversary proceeding was transferred to the Honorable Andrew B. Altenburg, Jr. Thereafter, the United States filed a timely Answer to the Amended Complaint and subsequently an Amended Answer (Doc. Nos. 65, 66). On November 17, 2023, the United States filed a Motion for Leave to File Interlocutory Appeal and a Notice of Appeal (Doc. Nos. 68, 69) in the District Court. The parties do not dispute that the appeal of the MTD Op. is an interlocutory appeal. (Doc. No. 68 at 2, Doc. No. 80 at 2).

Then, the United States filed the Motion currently before this court. The Plan Administrator filed an opposition (Doc. No. 80), and the United States filed a reply (Doc. No. 82). The court held oral argument upon the Motion and the record is closed. As of the time of this Opinion, the District Court has not decided the Motion for Leave to File Interlocutory Appeal and a Notice of Appeal. The matter is ripe for disposition.

## DISCUSSION

Bankruptcy Rule 8007 requires a party to initially seek a stay pending appeal in the bankruptcy court. *See* Fed. R. Bankr. P. 8007(a).[2] In *In re Revel AC, Inc.*, 802 F.3d 558 (3d Cir. 2015), the Third Circuit noted that the following four factors "come into play" when seeking a stay pending appeal:

> (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Id*. at 568 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The first two factors are the most important in the court's consideration of a request for a stay pending appeal. *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The Court should employ a sliding scale approach related to those factors. *Id.* at 568-69. For example, if the chance of success is low and the likelihood of irreparable injury is also low, a stay should not be granted. *Id.* However, if the movant satisfies the first two factors, the Court should consider the harm to the non-moving parties and the public policy implications. *Id.* at 569. "The burden of demonstrating these factors is on the moving party." *In re Frascella Enterprises, Inc.*, 388 B.R. 619, 622 (Bankr. E.D. Pa. 2008); *In re Koper*, 560 B.R. 68, 73 (Bankr. E.D.N.Y. 2016); *In re Wylie*, 635 B.R. 291, 296 (Bankr. E.D. Mich. 2021).

### The United States Cannot Demonstrate a Likelihood of Success on the Merits on the Motion for Leave to File Interlocutory Appeal

To establish a likelihood of success, the movant must show "a reasonable chance, or probability, of winning." *Revel*, 802 F.3d at 568 (quoting *Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011)). While the movant must show that its chances of success are more than negligible, it need not show that it is more likely than not that its motion and appeal will be successful. *Id*. at 569 (citing *Nken*, 556 U.S. at 434, and *Singer Mgmt. Consultants*, 650 F.3d at 229).

---

[2] Prior to revisions to the Part VIII of the Federal Rules of Bankruptcy in 2014, a request for a stay pending appeal was governed by Rule 8005. That rule was then revised and renumbered as Rule 8007, but, to the extent applicable here, the governing principles remain the same. *In re Charmoli*, 651 B.R. 529, 532 n.1 (Bankr. E.D. Wis. 2023) (citing *In re Sternitzky*, 638 B.R. 770, 775-76, 775 n.6 (Bankr. W.D. Wis. 2022)). *See also* Fed.R.Bankr.P. 8007, Advisory Note.

The situation before the court is somewhat unique in that because the United States is seeking to appeal an interlocutory order—it must first establish there is a likelihood that the District Court will even grant leave to appeal. Then, the United States must establish the likelihood of success on the underlying merits of its appeal. *Frascella*, 388 B.R. at 623 (quoting *In re Enron*, 2006 WL 2400411, at *1 (Bankr. S.D.N.Y. 2006) ("Where, as here, the order being appealed is interlocutory, the relevant "likelihood of success" looks to whether "the District Court will grant the Defendants' leave to file an interlocutory appeal, not the possibility that the Defendants will succeed on the merits of that appeal."); *In re Charmoli*, 651 B.R. 529, 533 (Bankr. E.D. Wis. 2023); *In re Davis*, 2012 WL 4343761, *2 (Bankr. D.S.C. Sept. 21, 2012); *In re Mounce*, 2008 WL 2714423 at *2-3 (Bankr. W.D. Tex. July 10, 2008).

Generally, an appeal of an order denying a motion to dismiss, which is an interlocutory order, is not immediately appealable. *Provident Bank v. Fardin*, 2023 WL 4526052, at *2 (D.N.J. July 13, 2023). A party seeking to appeal an interlocutory order must first file a motion for leave to file an interlocutory appeal—which, as noted above, the United States has done here. District courts have jurisdiction to hear appeals from interlocutory orders of the bankruptcy court pursuant to 28 U.S.C. § 158(a)(3) which requires: (1) the issue involve a controlling question of law; (2) as to which there are substantial grounds for difference of opinion; and that (3) an immediate appeal of the order may materially advance the ultimate termination of the litigation. 28 U.S.C. §1292(b); *Simon v. United States*, 341 F.3d 193, 199 (3d Cir. 2003).

It is noted that district courts should rarely grant leave pursuant Section 1292(b) because interlocutory appeals are "a deviation from the ordinary policy of avoiding piecemeal appellate review of trial court decisions which do not terminate the litigation." *Kapossy v. McGraw-Hill, Inc.*, 942 F. Supp. 996, 1001 (D.N.J. 1996) (quotation and citation omitted); *Truong v. Kartzman*, 2007 WL 1816048, at *2 (D.N.J. June 22, 2007) (an appellant must establish "that exceptional circumstances justify a departure from the basic policy of postponing the review until after the entry of final judgment") (additional citations omitted).

A successful interlocutory appeal "must concern a controlling question of law. A pure question of law is something the court of appeals could decide quickly and cleanly without having to study the record." *In re JRV Grp. USA L.P.*, 2022 WL 3646288, at *6 (D. Del. Aug. 24, 2022) (quoting *Gilmore v. Jones*, 2019 WL 4417490, at *4 (W.D. Va. Sep. 16, 2019)) (citations omitted). A controlling question of law is one which, "if erroneous, would be reversible error on final appeal." *In re Norvergence, Inc.*, 2008 WL 5136842, *2 (D.N.J. Dec. 5, 2008). What is more, merely questioning the correctness of the court's ruling is not sufficient grounds to grant leave to appeal. *Id*. Disagreement with the court's determination does not create a "substantial grounds for difference of opinion." *Id*. The grounds for a difference of opinion must arise out of genuine doubt as to the correct legal standard. *Id*. "It is without question that issues of fact are not an appropriate basis for an interlocutory appeal." *Frascella*, 388 B.R. at 623-24. "The mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010) (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)). Finally, the moving party must demonstrate that a resolution of the matter would materially advance the ultimate termination of the litigation. *Id*.

In its brief, the United States summarily asserts that its Motion for Leave to File an Interlocutory Appeal filed with the District Court establishes that the District Court is likely to grant leave to take an interlocutory appeal because the United States has satisfied the three prongs pursuant to §1292(b). Doc. No. 77 at 13. The United States has identified three alleged controlling questions of law: (1) whether 28 U.S.C. § 853(k)[3] bars the adversary proceeding; (2) whether the Bankruptcy Court has jurisdiction "to decide the correct scope of the forfeiture and the seizure warrants"; and (3) whether the abrogation of sovereign immunity in 11 U.S.C. § 106(a)(1) is not applicable because the United States is exercising its police power.

The United States' first two proposed controlling questions of law go to the bankruptcy court's jurisdiction. The question of subject matter jurisdiction is a controlling question of law. *United States v. Lahey Clinic Hosp., Inc.*, 399 F.3d 1, 7 (1st Cir. 2005) (questions concerning whether a court has subject matter jurisdiction are controlling questions of law for § 1292(b) purposes); *Sing v. Daimler Benz, AG*, 800 F.Supp. 260, 263 (E.D. Pa. 1992); *but see In re Venoco, LLC*, 2019 WL 2117638, *3 (D. Del. May 15, 2019) (denying interlocutory appeal of bankruptcy court's conclusion it possessed core jurisdiction because such determination is an inherently factual matter) (*citing In re W.R. Grace & Co.*, 591 F.3d 164, 174 n.9 (3d Cir. 2009)).

Nevertheless, the court finds there are not any grounds for substantial difference of opinion. The MTD Op. determined that the scope of this adversary proceeding encompassed whether digital assets remaining in BlockFi's possession at the time of the filing of the bankruptcy are property of the estate or whether the digital assets are subject to forfeiture. Doc. No. 55 at 9-10, 13, 21-22. Further, the District Court opined that this adversary proceeding merely seeks to determine whether the digital assets in the BlockFi accounts are property of the bankruptcy estate. Withdrawal Op. at 10-11. As has been made abundantly clear, this adversary proceeding does not seek to interfere with the appropriate application of the forfeiture powers found in § 853. The Plan Administrator has admitted that if digital assets are identified as having been the property of the criminal defendants, then the assets are forfeitable. A determination regarding whether the digital assets the United States is seeking to seize are property of the bankruptcy estate is undoubtedly within the court's jurisdiction. *See* 28 U.S.C. § 1334(b) (extending bankruptcy jurisdiction to proceedings "arising under title 11, or arising in or related to cases under title 11."); 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."); *In re ABC Learning Ctrs. Ltd.*, 728 F.3d 301, 311 (3d

---

[3] Section 853(k), 21 U.S.C. § 853(k) provides:

> (k) Bar on intervention. Except as provided in subsection (n), no party claiming an interest in property subject to forfeiture under this section may—
>
> (1) intervene in a trial or appeal of a criminal case involving the forfeiture of such property under this section; or
>
> (2) commence an action at law or equity against the United States concerning the validity of his alleged interest in the property subsequent to the filing of an indictment or information alleging that the property is subject to forfeiture under this section.

5

Cir. 2013) (Section 362 provides for an automatic stay of actions "against the debtor or against property of the estate"); *In re VistaCare Grp., LLC*, 678 F.3d 218, 228 (3d Cir. 2012) ("The district court in which a bankruptcy case is commenced has exclusive jurisdiction over all of the property of the estate, 28 U.S.C. § 1334(e)(1), and the bankruptcy court within such district may hear and determine all cases under the Bankruptcy Code and all "core proceedings" arising under the Code, 28 U.S.C. § 157(b)(1).").

The bankruptcy court's application of the law is not "unprecedented" as asserted by the United States. The United States persists, despite a prior opinion from the District Court and the MTD Op., in framing the dispute as an effort by the Plan Administrator to "define the scope of criminal seizure warrants and determine what is subject to seizure in a federal criminal case." Doc. No. 77 at 6. Indeed, the MTD Op. acknowledged that whether bankruptcy courts have jurisdiction over property potentially subject to forfeiture is a "jurisdictional quagmire." Doc. No. 55 at 12. To that end, the MTD Op. carefully considered cases cited by the United States but distinguished those case from the matter at hand by noting the cases "all involve a debtor who is the criminal defendant whose property is subject to forfeiture. In contrast, the Debtors here are creditors of the criminal defendants, who stand in the same shoes—holding unsecured claims against the Debtors—as the over 600,000 other customers." Doc. No. 55 at 12. The court does not see any faults in the MTD Op. and agrees with the Chief Judge Kaplan's thorough and thoughtful analysis. The issue the United States seeks to litigate on appeal is not whether the bankruptcy court was aware of the correct legal standard, but whether the court applied that standard correctly. In sum, the United States simply disagrees with this court's application of the law to the facts.

Next, the United States has argued the forfeiture proceedings against criminal defendants are excepted from the stay under 11 U.S.C. § 362(b)(4),[4] and therefore the sovereign immunity waiver found in 11 U.S.C. § 106 does not apply.[5] The United States third proposed grounds for appeal—that sovereign immunity bars the adversary proceeding—involves a controlling question of law. *Exxon Mobil Corp. v. Corporación Cimex S.A.*, 2021 WL 6805533, at *2 (D.D.C. Nov. 23, 2021) (appeal asserting abrogation of sovereign immunity involves a controlling question of law); *Chattanooga-Hamilton Cty. Hosp. Auth. v. Walker Cty.*, 2016 WL 9023007, at *2 (N.D. Ga. Apr. 8, 2016) (while sovereign immunity claim involved a controlling question of law, court denied

---

[4] Section 362(b)(4), 11 U.S.C. §362(b)(4), provides in relevant part:

> (b) The filing of a petition under section 301, 302, or 303 of this title [11 USCS § 301, 302, or 303], . . . does not operate as a stay—
>
> (4) under paragraph (1), (2), (3), or (6) of subsection (a) of this section, of the commencement or continuation of an action or proceeding by a governmental unit…to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power;

[5] Section 106(a)(1), 11 U.S.C. §106(a)(1), addresses abrogation of governmental sovereign immunity. It states, in relevant part, "[n]otwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: Sections 105 . . . [and] 362." 11 U.S.C. § 106(a)(1). Thus, § 106(a) of the Bankruptcy Code explicitly abrogates governmental sovereign immunity with respect to the Code provisions at issue in this adversary proceeding.

interlocutory appeal as a substantial ground for difference of opinion did not exist).

But, the United States has again has failed to necessarily identify substantial grounds for difference of opinion. The United States exercise of its police and regulatory powers under §362(b)(4) is not completely unfettered. The Third Circuit employs two tests—the pecuniary purpose and public policy tests—to determine whether proceedings fall within the police power exception to the automatic stay:

> The pecuniary purpose test asks whether the government primarily seeks to protect a pecuniary governmental interest in the debtor's property, as opposed to protecting the public safety and health. The public policy test asks whether the government is effectuating public policy rather than adjudicating private rights. If the purpose of the law is to promote public safety and welfare or to effectuate public policy, then the exception to the automatic stay applies. If, on the other hand, the purpose of the law is to protect the government's pecuniary interest in the debtor's property or primarily to adjudicate private rights, then the exception is inapplicable.

Doc. No. 55 at 16-17 (quoting *In re Nortel Networks, Inc.*, 669 F.3d 128, 139–40 (3d Cir. 2011) and citing *also In re LTL Mgmt., LLC*, 645 B.R. 59, 79-80 (Bankr. D.N.J. 2022)). The MTD Op. opined that the United States' actions do not protect the public safety and health because the public will not be exposed to any danger if the digital assets are not recovered. *Id*. at 17. The United States also fails the public policy test. In the MTD Op., the court observed the United States admitted at oral argument that allowing forfeiture to proceed at this time could ultimately benefit the criminal defendants and harm other innocent BlockFi creditors because the United States receiving the full amount sought under the forfeiture warrants would significantly diminish the recovery by other creditors. *Id*. at 17-18. Thus, forfeiture would not serve to deter further criminal behavior. *Id*. at 19. Chief Judge Kaplan applied the correct legal standard. The United States merely, but vehemently, disagrees with this court's application of the law. Such disagreement doesn't provide for grounds for substantial difference of opinion.

The United States sovereign immunity argument relies upon its argument that § 853(k) bars the adversary proceeding because the adversary proceeding is an impermissible outside challenge to a forfeiture and, thus, not "consistent with appropriate nonbankruptcy law." 11 U.S.C. 106(a)(4). The court will not revisit prior determinations that § 583(k) is inapplicable and that the adversary proceeding does not interfere with execution of the forfeiture warrants. The United States cannot just wave a forfeiture order and magically obtain digital assets that are not subject to forfeiture because the digital assets are either no longer in the Debtors' control or because the only digital assets available are substituted funds—funds comprised of contributions made by Debtors' other innocent customers and creditors. If the court determines the disputed digital assets are not property of the estate, then the police and regulatory exception in § 362(b)(4) would allow the forfeiture of the digital assets. The threshold issue of whether the digital assets are property of the estate must be resolved before the United States can proceed.

The United States has also failed to demonstrate that an appeal would materially advance the termination of the litigation. While a reversal of the bankruptcy court's determination of

jurisdiction may terminate the adversary proceeding, a refusal to reverse the bankruptcy court would substantially delay the progress of the litigation and the recovery by creditors of a portion of the value of their digital assets. The court also notes that if the United States ultimately prevails, the adversary proceeding would be terminated, but the Plan Administrator could pursue the estate's interests in the District Court for the Western District of Washington under 21 U.S.C. § 853(n) as noted in the brief of the United States (Doc. No. 77 at 15). Thus, the litigation would not have ended, but merely relocated to the United States' preferred forum.

In the court's view, the United States has failed to present the required *exceptional* circumstances justifying the need for immediate review. *See DeLalla v. Hanover Ins.*, 2010 WL 3908597, at *3 (D.N.J. Sept. 30, 2010) ("Interlocutory appeal is meant to be used sparingly and only in exceptional cases where the interests cutting in favor of immediate appeal overcome the presumption against piecemeal litigation."). The Court does not find any "circumstance or reason that distinguishes the case from the procedural norm and establishes the need for immediate review." *In re Magic Rests., Inc.*, 202 B.R. 24, 26-27 (D. Del. 1996) (denying leave for interlocutory appeal even where controlling issue of law existed because appellant failed to demonstrate exceptional circumstances, *i.e.,* an urgency that sets this case apart from the typical case).

Based upon the foregoing, the court finds that the United States has not established that there is a likelihood that the District Court will grant leave to appeal and the Motion must be denied in this regard.

### The United States Cannot Demonstrate a Likelihood of Success on the Merits of the Appeal

While the court respectfully believes it unlikely that the District Court will grant leave to appeal, the court also believes that the United States has not demonstrated a likelihood of success on the merits of its appeal of the denial of the motion to dismiss. Indeed, much of the court's reservations set forth above, are equally applicable to analysis of the merits of the appeal and are incorporated in this discussion.

Section 853(k) permits the United States to seize property named in the forfeiture warrants. The United States has stepped into the shoes of the criminal defendants as a creditor of the Debtors and possesses no greater rights than that of the criminal defendants. *United States v. Harris*, 246 F.3d 566, 576 (6th Cir. 2001). The purpose of the adversary proceeding is to determine whether any of the property, aka the digital assets, forfeitable under the warrants is in the possession of the Debtors and recoverable by the United States as a creditor of the Debtors. The plain language of § 853(k) demonstrates the bar against actions only applies to assets that are subject to warrants and § 853(k) does not bar actions like the adversary proceeding which seek to determine if the identified assets are even assets subject to forfeiture.

The adversary proceeding does not interfere with jurisdiction over the criminal forfeiture proceeding because the bankruptcy court will simply determine which digital assets in the Debtors' possession are property of the estate and what digital assets are subject to forfeiture. Determining

whether the disputed property is property of the bankruptcy estate is within this court's exclusive jurisdiction. *In re New Century Holdings, Inc.*, 387 B.R. 95, 105 (Bankr. D. Del. 2008), *as amended* (June 17, 2008) ("[A] determination of what is property of the estate and concurrently, of what is available for distribution to creditors of that estate, is precisely the type of proceeding over which the bankruptcy court has exclusive jurisdiction.") (quoting *In re Ascher*, 128 B.R. 639, 643 (Bankr. N.D. Ill. 1991)); *In re Marathe*, 459 B.R. 850, 854 (Bankr. M.D. Fla. 2011) ("[T]he Bankruptcy Court has exclusive jurisdiction over property of the bankruptcy estate, and over disputes regarding whether specific property is property of the estate.") (citing *In re Cox*, 433 B.R. 911, 920 (Bankr. N.D. Ga. 2010)). Finally, as discussed extensively above, the success of the United States' sovereign immunity argument and § 362(b)(4) argument is dependent upon the success of its arguments relating to § 853(k) and the scope of the bankruptcy court's jurisdiction over estate assets.

To establish a likelihood of success, the United States must show that it is more likely than not that its appeal will be successful. *Revel*, 802 F.3d at 569. The court stands firm regarding the correctness of Chief Judge Kaplan's prior determinations regarding the inapplicability of § 853(k) and the court's jurisdiction to determine whether disputed digital assets are property of the estate. The United States has not demonstrated more likely than not that the District Court will find that the adversary proceeding seeks to assert bankruptcy court jurisdiction over aspects of the criminal proceeding or the criminal forfeiture proceeding. As noted, it merely seeks a determination of what property in the Debtors' possession is estate property, and if that property is subject to forfeiture—something clearly within the exclusive jurisdiction of the bankruptcy court under 28 U.S.C. § 1334(e). And, because property of the estate is protected by the automatic stay under § 362 of the Bankruptcy Code, § 106 plainly waives and abrogates sovereign immunity, including as to whether the police power exception in § 362(b)(4) applies. *See* footnote 5, above. The United States has simply not met its burden that more likely than not, it will be successful on appeal.

**Irreparable Harm**

The United States must show that "irreparable harm is *likely* [not merely possible] in the absence of [a] [stay]." *Revel*, 802 F.3d at 569 (*quoting Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)) (emphasis and brackets in *Revel*). An irreparable harm refers to "harm that cannot be prevented or fully rectified by a successful appeal." *Id.* at 568 (quoting *Roland Mach. Coto. v. Dresser Indus.*, 749 F.2d 380, 386 (7th Cir. 1984)). "To establish irreparable harm, a stay movant must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Id.* at 571 (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)) (internal quotations omitted).

The court is unable to identify any irreparable harm that is likely to occur should the adversary proceeding continue. The United States has asserted this adversary proceeding could jeopardize the criminal trial which has not yet occurred because the United States has not obtained extradition and return of the criminal defendants to the United States. The Plan Administrator has stipulated that the specific assets deposited by the criminal defendants are forfeitable under the criminal forfeiture law. The adversary proceeding doesn't seek to undue this stipulation. The Plan Administrator seeks to determine which digital assets in the Debtors' possession are property of

Case 23-01144-ABA    Doc 83    Filed 01/30/24    Entered 01/30/24 11:45:44    Desc Main
Document      Page 10 of 12


the estate and what digital assets are subject to forfeiture. The United States also posited this court may make determinations that could affect the Western District of Washington's ability to determine whether the Debtors are a bona fide purchaser pursuant to § 853(n). Such an argument is speculative as the Plan Administrator has not indicated that he will be seeking a ruling regarding BlockFi's status under §853(n)—so no irreparable harm.

The parties also represented to the court little if any discovery will be sought making it unlikely that sensitive documents which are protected by grand jury secrecy will be requested during discovery.[6] More importantly, the Debtors' approved plan stipulates that the subject assets will not be distributed until a date that is thirty days after conclusion of the adversary proceeding. Thus, the digital assets will not be distributed during the pendency of the adversary proceeding and the United States' appeal rights are preserved. So—where is the likely irreparable harm in continuing the adversary proceeding? If the District Court grants the Motion for the interlocutory appeal *AND* finds Chief Judge Kaplan's determinations incorrect, the adversary proceeding is over and the United States prevails. On the other hand, if the District Court grants the motion *BUT* finds Chief Judge Kaplan's determinations correct, there still is not any distribution of assets until the adversary proceeding is finally concluded and the United States has exhausted its appeals. Certainly, the court is hard-pressed to find any harm to the United States, let alone irreparable harm at this juncture.

Finally, the United States is not without recourse to recompense the victims of the criminal defendants' Ponzi scheme because the United States is authorized by 21 U.S.C. § 853(p) to seek forfeiture of substitute property from the criminal defendants to provide restitution to victims of the alleged Ponzi scheme. Accordingly, because the United States posited mere speculative harms from the continuation of the adversary proceeding and failed to demonstrate actual and imminent harms, the United States has not met its burden.

### Balancing of the Harms and the Public Interest

"Keeping in mind that the first two factors are the most critical, if 'the chance of success on the merits [is only] better than negligible' and the 'possibility of irreparable injury' is low, a stay movant's request fails." *Revel*, 802 F.3d at 570 (*quoting Nken,* 556 U.S. at 434) (internal quotation marks omitted)). Nevertheless, even though it is *unnecessary to do so*, the court will briefly address the balance of the harms and consider the public interest factors to grant a stay. *Id*. at 571; *see also S.S. Body Armor I, Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019). In balancing the harms, the Court should "weigh the likely harm to the movant (absent a stay) (factor two) against the likely irreparable harm to the stay opponent(s) if the stay is granted (factor three). The Court should also take into account where the public interest lies (factor four)—in effect, how a stay decision has consequences beyond the immediate parties." *Id.* at 569 (quoting *Roland Mach.*,749 F.2d at 388).

The United States argues that Congress intended for criminal matters to be heard in the

---

[6] Should the issue of grand jury secrecy pursuant to Federal Rule of Criminal Procedure 6(e)(2) arise during the process of discovery, this court would not be averse to reconsidering whether the United States would suffer irreparable harm barring a stay in proceedings.

district court pursuant to § 853(k) and that Congress exempted criminal forfeiture proceedings from the automatic stay pursuant to § 363(b)(4).  The United States further asserts that a stay is necessary to protect the victims of the criminal defendants who will benefit from the seizure of the digital assets.  The Plan Administrator counters that BlockFi's creditors have been denied access to their digital assets for more than a year and a stay of proceedings will further retard the creditors' access.  The Plan Administrator notes that if the full amount/value of the digital assets claimed by the United States is transferred, the recovery by BlockFi's other unsecured creditors will be reduced. The Plan Administrator argues that nothing in § 853 or any other law requires innocent unsecured creditors of a third-party to prosecute their entitlement to that debtor's assets in a criminal forfeiture proceeding rather than in the bankruptcy court.

The collapse of BlockFi and other cryptocurrency entities has deprived many innocent digital asset holders of access to their assets and inevitably a portion of the value of their digital assets.  The criminal defendants have allegedly deprived innocent investors of their money through a Ponzi scheme.  The general public has been damaged by both scenarios.  Having weighed the likely harm to each party, the balancing of the harms weighs in favor of the adversary proceeding going forward. BlockFi's unsecured creditors will suffer a greater and more immediate harm if they are further delayed in recovering a portion of their digital assets, or the value thereof, than the criminal defendants' victims who will not receive restitution until the sentencing phase—currently an undetermined date in the future.  *In re BSA*, 2023 WL 6442586, at *9 (D. Del. Oct. 3, 2023) (noting "[c]ourts recognize that a delay in distributions is a tangible and substantial harm.") (other citations omitted).  Further, it is in the interests of the public and justice to ensure that United States is not seizing funds that are not subject to the seizure warrant and therefore diminishing the recovery of other innocent unsecured creditors and possibly benefitting the criminal defendants.

A stay will impact the public interest if it has "consequences beyond the immediate parties." *In re Commonwealth Renewable Energy, Inc.*, 2016 WL 1238199, at *7 (Bankr. W.D. Pa. Feb. 10, 2016) (citation omitted).  A stay pending appeal will affect not only the United States, a single creditor of the Debtors, and the Plan Administrator, but also the hundreds of thousands of other BlockFi creditors whose distributions will be delayed. The Public interest requires an efficient resolution to the adversary proceeding. Having found that the United States is unlikely to succeed on the merits, the public interest in efficiently resolving cases would not be furthered by a stay. *See, e.g., Frascella,* 388 B.R. at 629 (denying relief under the former Rule 8005, in part, because the public interest in "prompt and fair resolution of bankruptcy cases" is not served by "further delay while [a party] pursues an interlocutory appeal to the District Court"); *Combs v. FV-1, Inc.*, 2013 WL 6662729, at *4 (D. Md. Dec. 16, 2013) (holding that because the party seeking a stay pending appeal is unlikely to succeed on the merits, the public interest in efficiently resolving cases would not be furthered by a stay); *In re BSA*, 2023 WL 6442586, at *9 (stating "timely resolution of the bankruptcy estate is ... in the public interest") (quoting *In re W.R. Grace & Co.*, 412 B.R. 657, 666 (D. Del. 2009)).  Thus, the public interest factor weighs in favor of a continuation of the adversary proceeding to determine what property of the estate exists so that all the creditors of the Debtors might recover.

## CONCLUSION

Accordingly, this court DENIES the United States' Motion in its entirety as it is not entitled to a stay pending the District Court's determination of whether to grant leave to file an interlocutory appeal, nor would it be entitled to a stay should the District Court grant such an appeal.

An appropriate judgment has been entered consistent with this decision.

The court reserves the right to revise its findings of fact and conclusions of law.

/s/ Andrew B. Altenburg, Jr.
United States Bankruptcy Judge

Dated: January 30, 2024